UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PABLO OVALLE, INDIVIDUALLY AND )
ON BEHALF OF ALL OTHERS )
SIMILARLY SITUATED, )
            )         CIVIL ACTION NO.
           Plaintiff, )
            )         3:17-CV-2714-G
VS. )
            )
DRG CONCEPTS, LLC, d/b/a DALLAS )
FISH MARKET, )
            )
           Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant DRG Concepts, LLC d/b/a

Dallas Fish Market ("DRG") to dismiss the claims of the plaintiff Pablo Ovalle

("Ovalle") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (docket

entry 13). For the reasons set forth below, the defendant's motion is granted in part

and denied in part.

## I. BACKGROUND

In this case, Ovalle alleges that DRG failed to adequately compensate him --

and other similarly situated individuals -- in accordance with the provisions of the

Fair Labor Standards Act ("FLSA"). Plaintiff's First Amended Complaint ¶ 3 (docket

entry 10).  Specifically, he contends that DRG's compensation scheme violated the FLSA because the company paid servers like Ovalle on a sub-minimum wage hourly basis plus tips, and it permitted managers and other employees to participate in the tip pool.  *Id.*  According to Ovalle, he is an individual who was employed by DRG within three years of the filing of his complaint and "until approximately January 2017."  *Id.* ¶ 16.  DRG is a restaurant in Dallas that allegedly does over $500,000.00 per year in business and gross sales.  *Id.* ¶ 14.

On October 3, 2017, Ovalle filed his initial complaint in this court.  Plaintiff's Original Complaint (docket entry 1).  DRG responded to the complaint by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant DRG Concepts, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint for Failure to State a Claim and Brief in Support (docket entry 6).  Subsequently, on December 4, 2017, Ovalle filed an amended complaint.  Plaintiff's First Amended Complaint.

On December 29, 2017, DRG filed a second motion to dismiss containing many of the same arguments found in its initial motion.  Defendant DRG Concepts, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim and Brief in Support ("DRG's Motion").  DRG bases its renewed motion on two primary contentions.  First, DRG maintains that the court should dismiss Ovalle's claims because he "failed to allege sufficient facts to show

coverage under the FLSA." DRG's Motion ¶ 1. Second, DRG argues that dismissal is appropriate in light of Ovalle's failure "to allege sufficient facts to give [the] [d]efendant notice of the members of the putative class." *Id.*

On January 19, 2018, Ovalle filed a response to the motion. Plaintiff's Response to Defendant's Motion to Dismiss ("Ovalle's Response") (docket entry 14). In his response, Ovalle addresses both of DRG's primary arguments, insisting that the allegations contained in his first amended complaint are sufficient to establish both individual and enterprise coverage under the FLSA, and that he "has sufficiently put [the] [d]efendant on notice of his claims, both individual and collective." *Id.* at 1.

On February 2, 2018, DRG filed its reply to Ovalle's response. Defendant DRG Concepts, LLC's Reply in Further Support of its Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint For Failure to State a Claim and Supporting Brief ("DRG's Reply") (docket entry 15). DRG's motion is now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

1. *Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of

relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendant "across the line from conceivable to plausible." See *id.* at 679, 683.

### 2. *Establishing coverage under the FLSA*

Congress enacted the FLSA to provide each covered employee with "[a] fair day's pay for a fair day's work," and to protect them from "the evil of overwork as well as underpay." *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 333 (5th Cir. 2017) (quoting *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 739 (1981)) (internal quotation marks omitted). The FLSA mandates that covered employers pay wages to their employees of at least $7.25 an hour. 29 U.S.C. § 206(a)(1)(C). The statute also mandates that covered employers not utilize employees "for a workweek longer

than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

The FLSA's protections are not unlimited, however. Consistent with Congress's power to regulate interstate commerce, the statutory guarantees of overtime and minimum wages only apply (1) to an employer that has "employees who in any workweek are engaged in commerce or in the production of goods for commerce" ("individual coverage"), or (2) to an employer that has employees "employed in an enterprise engaged in commerce or in the production of goods for commerce" ("enterprise coverage"). *Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 438 (N.D. Tex. 2012) (Fish, Senior J.) (internal brackets omitted). Indeed, because coverage under the FLSA is an essential element of a successful claim for overtime or minimum wages, to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege facts sufficient to establish either individual or enterprise coverage. See *Alonso v. Tepa Mar Y Tierra Inc.*, No. 3:11-CV-1783-O, 2013 WL 12124018, at *2 (N.D. Tex. Feb. 5, 2013) (O'Connor, J.) (noting that "[e]ither individual coverage or enterprise coverage is sufficient to trigger the FLSA's overtime and minimum wage provisions").

a. "Individual coverage"

The phrase "employees who in any workweek [are] engaged in commerce or in the production of goods for commerce" is not statutorily defined. But courts in the Fifth Circuit have interpreted the "engaged in commerce" language in 29 U.S.C. §§ 206(a)(1) and 207(a)(1) by applying a "practical test," which looks to whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." See *Sobrino v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Mitchell v. H.B. Zachry Company*, 362 U.S. 310, 324 (1960)). "Work that is purely local in nature does not meet the FLSA's requirements, but any regular contact with commerce, no matter how small, will result in coverage." *Williams v. Henagan*, 595 F.3d 610, 621 (5th Cir. 2010) (internal brackets and quotation marks omitted); see also *Marshall v. Victoria Transportation Company, Inc.*, 603 F.2d 1122, 1124 (5th Cir. 1979) ("No [d]e minimis rule applies to the Act.").

The Supreme Court has also explained that the test is whether "the employee's activities . . . are actually in or so closely related to the movement of the commerce as to be a part of it." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). It is settled that Congress did not regulate to the full extent of its power under the Commerce Clause when it enacted the FLSA. See *Wirtz v. Wohl Shoe Company*, 382 F.2d 848, 850 (5th

Cir. 1967) ("[I]t is now settled that in enacting the FLSA Congress did not exercise the full scope of its authority to regulate the working conditions of employees whose activities merely affect commerce."). It is therefore not sufficient, for purposes of the "engaged in commerce" clause of the individual coverage provision, that an employee's work merely "affects" interstate commerce in some way. *Id.*; *Barr v. Custom Design & Installation, Inc.*, No. 3:13-CV-04925-M, 2015 WL 1255870, at *2 (N.D. Tex. Mar. 19, 2015) (Lynn, J.).

### b. "Enterprise coverage"

While Congress did not define the language associated with individual coverage, it did define the phrase "enterprise engaged in commerce or in the production of goods for commerce." Specifically, such an enterprise is one that "(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A).

A plaintiff can meet the first prong of the enterprise coverage definition in one of two ways, either via the "engaged in commerce" clause or via the "handling" clause. Given the identical language, the court can analyze the "engaged in

commerce" clause in essentially the same manner as it analyzes individual coverage. *Mendoza*, 911 F. Supp. 2d at 439. The "handling" clause, however, requires separate analysis. *Id.* at 439-40.

### 3. *The Rule 12(b)(6) standard applied to FLSA collective actions*

In collective action cases, plaintiffs must "give the defendant fair notice of the putative class" to withstand a Rule 12(b)(6) motion. *Flores v. Act Event Services, Inc.*, 55 F. Supp. 3d 928, 934 (N.D. Tex. 2014) (Fish, Senior J.). In considering whether the plaintiff has provided fair notice of the putative class, the court relies on "judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679). At the conditional certification stage, by contrast, plaintiffs must "produce evidence which allows the [c]ourt to conclude that a reasonable basis exists for finding that there are other similarly situated employees who wish to opt-in to the action." *Id.* (quoting *Dyer v. Lara's Trucks, Inc.*, No. 1:12-CV-1785-TWT, 2013 WL 609307, at *3 (N.D. Ga. Feb. 19, 2013)). "[The] arguably more liberal Rule 12(b)(6) standard allows both the rule and the certification process to play their proper role in the management of collective actions." *Id.*

### B. Application

#### 1. *Whether Ovalle's allegations are sufficient to establish FLSA coverage*

##### a. "Individual coverage"

In his response to DRG's motion, Ovalle contends that he has stated a plausible

claim for individual coverage.  *See* Ovalle's Response at 9-10.  In particular, Ovalle

avers that his allegations are sufficient because he "has alleged he was a server in

[the] [d]efendant's restaurant, that he engaged with [the] [d]efendant's customers,

and took payment for these commercial transactions."  *Id.* at 9.  DRG, conversely,

argues that Ovalle has failed to establish individual coverage under the FLSA because

the allegations contained in his first amended complaint constitute mere recitations

of the statutory elements for individual coverage.  *See* DRG's Reply ¶¶ 30, 35.  DRG

also relies on a relatively recent case from the Northern District of Texas, *Ecoquij-Tzep*

*v. Hawaiian Grill*, No. 3:16-CV-625-BN, 2016 WL 8674569 (N.D. Tex. Dec. 16,

2016) (Horan, M.J.), to contend that Ovalle's allegations that he worked as a server,

ran credit cards, and engaged with customers are insufficient for purposes of pleading

individual coverage under the FLSA.  See *id.* ¶¶ 33-35.

"In the motion to dismiss context, plaintiffs who allege the elements of

individual coverage under the FLSA without explaining their involvement in

interstate commerce do not sufficiently plead individual coverage."  *Shorts v. Primeco*

*Auto Towing, L.L.C.*, No. H-13-2794, 2014 WL 3670004, at *3 (S.D. Tex. July 22,

2014) (citing *Coleman v. John Moore Services, Inc.*, No. H-13-2090, 2014 WL 51290, at

*3 (S.D. Tex. Jan. 7, 2014)).  In *Ecoquij-Tzep*, the plaintiff averred that during his

employment with the defendant, he worked as a cashier and server and regularly

processed credit card payments from customers.  *Ecoquij-Tzep*, 2016 WL 8674569, at

*4.  Ultimately, however, the court concluded that the allegations in the plaintiff's

amended complaint were insufficient to establish individual coverage because "mere

usage of credit cards is insufficient for purposes of establishing FLSA individual

coverage."  *Ecoquij-Tzep*, 2016 WL 8674569, at *4 (collecting cases) (internal

quotation marks omitted).

On the issue of individual coverage, Ovalle's first amended complaint contains

the following allegations: "[The] [p]laintiff engaged with [the] [d]efendant's

customers, ran credit cards and handled other forms of payment for [the]

[d]efendant, and generally engaged in commerce on [the] defendant's behalf."

Plaintiff's First Amended Complaint ¶ 16.  While there exists no *de minimis*

requirement in establishing individual coverage, as Ovalle correctly points out in his

response, *see* Ovalle's Response at 9, the court can find no material difference

between the individual coverage allegations contained in Ovalle's first amended

complaint and those deemed insufficient by the court in *Ecoquij-Tzep*.  Even if it is

assumed that, from time to time, Ovalle processed credit cards from out-of-state

customers, it appears that all of the alleged transactions and interactions took place

in Dallas and were otherwise wholly local in character.  See *Mayo v. Jean Nicole Hair

Salons, Inc.*, No. 2:15-CV-115-FtM-38MRM, 2015 WL 4751202, at *3 (M.D. Fla.

Aug. 11, 2015).  The court therefore concludes that Ovalle has not pleaded

allegations sufficient to establish individual coverage for his FLSA claim.

### b. "Enterprise coverage"

As to enterprise coverage, DRG argues that Ovalle's allegations are insufficient because he merely recites the statutory elements. DRG's Reply at 5. After reviewing the first amended complaint, the court can find no specific allegations demonstrating that Ovalle handled goods that traveled in interstate commerce; instead, as DRG contends, Ovalle's allegations consist of formulaic recitations of the statutory elements of enterprise coverage. See *Morrow v. J.W. Electric, Inc.*, No. 3:11-CV-1988-D, 2011 WL 5599051, at *3 (N.D. Tex. Nov. 16, 2011) (Fitzwater, Chief J.). In paragraph 12 of his first amended complaint, Ovalle alleges the following:

> At all times hereinafter mentioned, [the] [d]efendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprises have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

Plaintiff's First Amended Complaint ¶ 12. These allegations are conclusory and, as such, are insufficient to provide "the grounds of his entitlement to relief." See *Morrow*, 2011 WL 5599051, at *3 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted); see also *Lindgren v. Spears*, No. H-10-1929, 2010 WL 5437270, at *3 (S.D. Tex. Dec. 27, 2010) (determining that conclusory allegations of

FLSA coverage are insufficient under Rule 8 of the Federal Rules of Civil Procedure). Because Ovalle's first amended complaint contains little more than threadbare recitations of the statutory requirements for enterprise coverage, Ovalle has failed to allege sufficient facts to enable the court to conclude that he has pleaded "a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205.

2. *Whether Ovalle has alleged sufficient fact to give DRG notice of the putative class*

DRG maintains that Ovalle's first amended complaint does not provide it with fair notice of the putative class because he failed to identify the job titles or duties of the class members. *See* DRG's Reply ¶ 10. But while the court acknowledges that Ovalle's claims are not artfully pleaded, inartful pleading alone does not justify dismissal. See *Flores*, 55 F. Supp. 3d at 939. This case does not appear to involve a putative class that is potentially national in its scope; rather, the allegations in the first amended complaint make clear that this litigation is likely to be limited and local. Even a cursory review of Ovalle's first amended complaint reveals allegations that DRG employed Ovalle as a server and that the putative class will only extend to restaurant employees -- specifically, those employed within three years of the date of Ovalle's original complaint -- who are or were compensated at an hourly rate below the federal minimum, supplemented through DRG's tip-credit system. *See* Plaintiff's First Amended Complaint ¶ 5. The court will refrain from conducting a more

searching inquiry into the propriety of the prospective class until certification, and concludes that Ovalle's first amended complaint has provided DRG with fair notice of the putative class. If Ovalle cures the above-mentioned pleading defects, DRG will have the opportunity to renew its objections at the conditional certification stage. See *Ecoquij-Tzep*, 2016 WL 8674569, at *7.

### 3. *Affording Ovalle an opportunity to amend*

In its reply, DRG contends that, should the court conclude that Ovalle has failed to state a claim pursuant to Rule 12(b)(6), the court should subsequently deny Ovalle any opportunity to further amend his complaint. DRG's Reply ¶¶ 39-46. As the basis for this request, DRG points out that Ovalle has already amended his complaint once, after DRG filed its initial motion to dismiss, and that affording him another opportunity to amend would lead to undue delay and additional expense. See *id.* ¶ 45.

But, as DRG itself recognizes, Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although Ovalle has already amended his complaint, the court concludes that it would be premature to refuse Ovalle further opportunity to amend, particularly given that Ovalle's first amendment came before the court had the chance to address DRG's motion to dismiss. With this court's

opinion in hand, Ovalle will now be better equipped to address the deficiencies in his first amended complaint.

## III. <u>CONCLUSION</u>

For the reasons stated above, DRG's motion is **GRANTED** in part and **DENIED** in part. Ovalle has provided DRG with fair notice of the putative class, but, because the allegations in Ovalle's first amended complaint failed to establish coverage under the FLSA, his individual and collective claims are hereby **DISMISSED** without prejudice. Ovalle shall have leave to amend his complaint to cure -- if he can -- the pleading defects described above, provided that Ovalle's amended complaint is filed and served no later than **June 22, 2018**.

**SO ORDERED**.

June 8, 2018.


_A. Joe Fish_____
**A. JOE FISH**
**Senior United States District Judge**